# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALADDIN'S EATERY SYSTEMS, INC., | Case No.: 2:18-cv-00412-APG-GWF |
| Plaintiff | **Order Granting Motion to Dismiss** |
| v. | [ECF No. 21] |
| PHWLV, LLC, et al., | |
| Defendants | |

Plaintiff Aladdin's Eatery Systems, Inc. (AES) operates a chain of Middle-Eastern restaurants called Aladdin's Eatery. It sued PHWLV, LLC and OpBiz, LLC,[1] requesting a declaratory judgment that the defendants' trademarks formerly associated with the Aladdin casino in Las Vegas have been abandoned and are invalid and unenforceable. PHWLV moves to dismiss, arguing that there is no actual controversy between the parties and I therefore lack subject matter jurisdiction. Because AES has not alleged facts that indicate it is in reasonable apprehension of adverse action from PHWLV, I grant the motion to dismiss.

**I.  BACKGROUND[2]**

In 2006, AES's predecessor in interest, Aladdin's Eatery, Inc., and OpBiz were parties to a proceeding before the Trademark Trial and Appeal Board (TTAB) in which AES's predecessor sought cancellation of three trademarks OpBiz owned that were associated with restaurant, bar, and lounge services in Las Vegas. In 2007, the parties entered into a consent agreement that terminated the TTAB proceeding. In that agreement, AES agreed to (1) use the term "eatery" consistently in conjunction with the term "Aladdin's," (2) limit its use of "Aladdin's Eatery"

---

[1] OpBiz has not participated in the case and the clerk of court entered default against it. ECF No. 24.

[2] These facts come from the complaint's factual allegations, which I accept as true at this stage.

marks to restaurants serving primarily Lebanese, Middle-Eastern, or Mediterranean foods; and (3) not use the Aladdin's Eatery mark in certain geographical locations (including Las Vegas) for five years and after five years only if OpBiz (or its successor in interest) "has abandoned its use of the ALADDIN Mark throughout the United States as a matter of law." AES is bound by this agreement as Aladdin's Eatery, Inc.'s successor in interest and PHWLV is bound by the agreement as OpBiz's successor in interest.

AES alleges that PHWLV has not used its registered Aladdin marks for more than ten years and has allowed them to be deemed "dead" by the U.S. Patent and Trademark Office. AES further alleges that PHWLV has taken no action against others who are using and successfully registering trademarks containing the term "Aladdin" in connection with casino and gaming services, presumably infringing on PHWLV's marks.

AES contacted PHWLV and asked it to acknowledge abandonment of the marks and that AES is no longer bound by the consent agreement. PHWLV refused to lift all restrictions, but did offer to alter the agreement to remove the restriction requiring AES to use the term "eatery" in conjunction with "Aladdin's," lift most of the geographical restrictions, and remove the restriction to using the marks only in connection with particular goods or services. AES did not agree to these alterations and instead filed this suit against PHWLV and OpBiz, alleging two claims for declaratory relief. AES first asks for a declaration that PHWLV's marks were abandoned and are invalid. Its second claim for relief requests a declaration that PHWLV's marks are unenforceable.

## II. ANALYSIS

### A. Subject Matter Jurisdiction—Rule 12(b)(1)

A complaint may be dismissed for lack of subject matter jurisdiction.[3] A jurisdictional attack under Rule 12(b)(1) "may be facial or factual."[4] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[5] In resolving a facial attack, courts must "assume [the plaintiff's] allegations to be true and draw all reasonable inferences in [its] favor."[6] "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[7] If the moving party "convert[s] the motion to dismiss into a factual motion by presenting affidavits or other evidence . . . , the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[8] AES bears the burden of establishing federal subject matter jurisdiction.[9]

PHWLV argues that the allegations in AES's complaint are insufficient on their face to establish subject matter jurisdiction. Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in AES's complaint. I therefore assume the allegations in the complaint are true and draw all reasonable inferences in AES's favor.

---

[3] Fed. R. Civ. P. 12(b)(1).
[4] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).
[5] *Id.*
[6] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
[7] *Safe Air*, 373 F.3d at 1039.
[8] *Id.* (citation omitted).
[9] *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013).

3

### B. AES's complaint does not present an actual controversy and must be dismissed for lack of subject matter jurisdiction.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[10] The Declaratory Judgment Act "does not itself confer federal subject matter jurisdiction."[11] The phrase "case of actual controversy" refers to "cases" and "controversies" that are justiciable under Article III.[12] To demonstrate that a case or controversy exists, a declaratory judgment plaintiff must show that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[13] The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[14]

---

[10] 28 U.S.C. § 2201(a).

[11] *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).

[12] *Medimmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).

[13] *Id.* (citations omitted).

[14] *Id.*

4

In the trademark context,[15] an actual controversy exists if the plaintiff has a real and reasonable apprehension that he will be subject to liability for infringement.[16] That apprehension is considered from the plaintiff's position; the court need not identify "specific acts or intentions of the defendant that would automatically constitute a threat of litigation."[17] Under the Ninth Circuit's "flexible approach," concrete threats are not required.[18] An express or implied threat of litigation can be enough to establish a justiciable controversy.[19]

AES alleges that an actual controversy exists between the parties because PHWLV's refusal to lift the consent agreement's terms has prevented it from moving forward with plans to expand its business and alter its marks. PHWLV argues that AES has not alleged any actions on PHWLV's part that put it in reasonable apprehension of litigation.

---

[15] AES argues that this case involves interpretation of a contract and courts commonly issue declaratory judgments on the meaning and impacts of contracts between parties. However, AES's complaint does not ask me to determine the parties' obligations under the consent agreement, but rather asks me to determine the validity, applicability, and enforceability of PHWLV's trademarks. The complaint does not seek interpretation of the meaning or effect of any provision of the consent agreement. The real issue here is the abandonment of the trademarks, which does not become a contractual issue simply because the effect of the abandonment might alter the terms of the contract. I therefore look to cases evaluating the existence of an actual controversy in trademark cases.

[16] *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007); *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 Fed. Appx. 632, 634 (9th Cir. 2014).

[17] *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

[18] *Rhoades*, 504 F.3d at 1157.

[19] *See id.* at 1158 (considering attorney's threat of suit at a meeting with plaintiff); *Chesebrough-Pond's*, 666 F.2d at 396–97 (finding a cease-and-desist letter asserting a likelihood of confusion gave rise to reasonable inference of a threat of an infringement action); *Neilmed Products, Inc. v. Med-Systems, Inc.*, 472 F. Supp. 2d 1178, 1180–81 (N.D. Cal. 2007) (finding that a detailed notice of opposition to plaintiff's registration application was sufficient to imply a threat of litigation).

AES relies on *Neilmed Products, Inc. v. Med-Systems, Inc.*,[20] and *Pizitz, Inc. v. Pizitz Mercantile Co. of Tuscaloosa, Inc.*[21] to argue that it reasonably apprehends adverse action by PHWLV. In *Neilmed*, the defendant filed a notice of opposition to the plaintiff's trademark application because it was similar to the defendant's competing mark.[22] The plaintiff sued, seeking a declaratory judgment that its mark did not infringe on the defendant's.[23] The court denied the defendant's motion to dismiss because, from the plaintiff's perspective, there was a substantial risk that the defendant would take legal action if the plaintiff kept using its marks based on the defendant's actions.[24] The defendant had "invoked the language of trademark infringement and dilution," and had not agreed not to sue the plaintiff despite not having done so.[25] The court noted that "[t]he fact that Defendant has not yet acted upon its veiled threat does not erase the threat's effect."[26]

But *Neilmed* is inapposite because AES does not allege similar actions by the parties here. AES does not allege that it has changed its marks, is already using marks that are similar to PHWLV's, or has taken any other actions that would expose it to the risk of litigation under which the *Nielmed* plaintiff operated. And AES does not allege that PHWLV knew about its plans or threatened to take legal action should AES follow through on those plans. In fact, AES alleges that PHWLV has affirmatively ignored infringement by other companies, thereby

---

[20] *Neilmed*, 472 F. Supp. 2d at 1178.
[21] *Pizitz, Inc. v. Pizitz Mercantile Co. of Tuscaloosa, Inc.*, 467 F. Supp. 1089 (N.D. Ala. 1979).
[22] *Neilmed*, 472 F. Supp. 2d at 1179.
[23] *Id.*
[24] *Id.* at 1182.
[25] *Id.* at 1181.
[26] *Id.* at 1182.

undercutting its allegations that PHWLV would act against AES if AES takes steps to open a restaurant in Las Vegas or change the design of its marks.

*Pizitz* is also inapposite. In that case, the plaintiff signed a lease to open a store in the same town where the defendant operated under the same name for more than 50 years, and the defendant had already objected to the plaintiff's use of that name.[27] The court held that the signing of a lease, which manifested intent to open a business despite the defendant's objections, presented a "putative infringement in an inchoate state."[28] The plaintiff spent money and took affirmative steps toward opening its business and needed its rights declared before doing more.

AES has not alleged similar facts. It has not alleged that it has signed a lease, acquired interested franchisees, or done more than express interest in opening a restaurant in Las Vegas. It alleges that it wants to change the styling of its marks to reflect a more "traditionally Middle Eastern" style but does not allege that it has changed its marks or how its proposed changes would overlap with PHWLV's marks. This is not a case of inchoate infringement like in *Pizitz*. Instead, AES presents a case of hypothetical infringement, and asks for what amounts to an advisory opinion on its rights should the hypothetical facts become reality.

I therefore grant PHWLV's motion to dismiss for lack of subject matter jurisdiction. But amendment may not be futile in this case. AES raised new facts in its opposition, indicating that it may be able to allege more than a hypothetical intent to take action that potentially breaches the consent agreement. I grant AES leave to amend its complaint if it can allege additional facts that show it is in reasonable apprehension of legal action.

/ / / /

---

[27] *Pizitz*, 467 F. Supp. 1091–94.
[28] *Id.* at 1097.

7

## III. CONCLUSION

IT IS THEREFORE ORDERED that PHWLV's motion to dismiss **[ECF No. 21] is GRANTED**. AES may file an amended complaint within 21 days of this order. If it chooses not to, this case will be dismissed without prejudice.

DATED this 22nd day of March, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE